FILED
2011 OCT 17 PM 3:39
DISTRICT COURT

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF FLORIDA
AT ORLANDO

| | |
|---|---|
| Karl Alan Schoenwaler <sic> | ) Case No: **6:11-CV-1192-ORL-35-KRS** |
| Accused, | ) NOTICE FOR DISMISSAL FOR LACK OF JURISDICTION; |
| vs. | ) BRIEF IN SUPPORT OF NOTICE FOR DISMISSAL FOR LACK OF JURISDICTION; |
| THE STATE OF FLORIDA, | |
| by and through: Lawson Lamar, State Attorney Ninth Judicial Circuit of Florida 415 North Orange Avenue, Orlando, Florida 32801 | ) TABLE OF AUTHORITIES; |
| Respondent. | ) CONSTITUTIONS |

TO ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE that a hearing has been requested by the Accused Citizen Karl Alan Schonwalder to take place on the ________ day of ________________, 201_, at ____________ hours in Courtroom _______, of the above entitled Court located at _______________.

1. This hearing has been called to resolve certain conclusions of law which are in controversy. The demand for this hearing constitutes a direct challenge to the jurisdiction of State of Florida County and/or Circuit Courts in the instant matter at bar (Orange county Florida Case Nos: 2011CT006697; 2011CT006698; 2011 CF007278; 2011CF007279). The accused Citizen Karl Alan Schonwalder is aware that he has been compelled to participate in this action under threat of arrest and incarceration, should he fail to appear when ordered to do so.

2. The subject matter jurisdiction of the Florida state Courts is not in question here. Rather, because the matter is criminal in nature and involves a compelled performance to what is essentially derived from Roman Civil (Administrative) Law, the Accused herewith challenges the In Personam jurisdiction of their Courts. The Accused does so on the ground that the Defendant/Respondent has failed to provide an offer of proof that the Accused is subject to the legislative equity jurisdiction in which their Courts intend to sit to hear and determine only the facts of this matter, and not the law, arising from a "Bill of Pains and Penalties".

3. It is well known that jurisdiction may be challenged at any time as an issue of law because, absent jurisdiction, all acts undertaken under the color of statute or under the color of ordinance are null and void ab initio (from their inception). Jurisdiction was challenged on June 20, 2011 with the Foreign Plea in Abatement placed into the record and received no intelligible answer from the state attorney but was striken by judge Komanski without authority on July 11, 2011.

4. Because the Accused was compelled, under threat of further damage and injury, to enter the Florida state Courts to demand relief, this appearance is SPECIAL, and not general in nature.

5.      The argument which follows sets forth the nature of the controversy "At Law". This Court is sitting on the Law side of its jurisdiction to hear the controversy in a neutral capacity and to make a fair and impartial determination. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

6.      This document, and the argument contained herein, is intended to be the basis for further action on appeal, should this Court fail to afford a complete hearing on the law of the matter at the noticed request of the Citizen Accused in the state court.

## JURISDICTION

1.      In 1838 Florida became one of the several States in the Union of States known as the United States of America.

2.      Article 3 of the Constitution for the United States of America gives "judicial" power to the various courts, among them the District Courts. What is not generally recognized is that the District Courts of the United States may seat in different jurisdictions. Hearers may wear different hats, so to speak, depending on the nature of the case brought before them.

3.      This Court may sit "At Law" to hear crimes and civil complaints involving a damage or injury which is unlawful under the laws of a State; or it may seat in equity to determine specific performance to a contract in equity. Alternatively, as a creation of the foreign Corporate State, this Court may seat administratively in a fiction which may be termed "legislative equity", under authority to regulate activities not of common right, such as commerce for profit and gain, or other privileged activities.

4.      The Florida Revised Statutes are essentially "civil, regulatory statutes" which were enacted in by the Florida Legislature as Florida Laws and then revised or condensed, and to set forth rules and regulations for the production of revenue for the "STATE OF FLORIDA."

5.      It is an unlawful abuse of procedure to use revised statutes as "evidence of the law" in a criminal matter.

6.      Both civil and criminal matters "At Law" require that the complaining party be a victim of some recognizable damage. The "Law" cannot recognize a "crime" unless there is a victim who properly claims to have been damaged or injured.

7.      Regulatory statutes, on the other hand, are enacted under the police power of State and Federal Governments to regulate activities not of common right. All statute law is inferior to, and bound by, the restrictions of the Constitution for the United States of America. These "regulatory" statutes operate as "law" on the subjects of those statutes, and violations may carry sanctions of a criminal nature, even in the absence of a victim or injury.

8.      A self-evident truth which distinguishes "crimes" under the Law, from "offenses of a criminal nature" under regulatory statutes, is the difference between Rights afforded to a defendant in a criminal proceeding, and "rights" available to a defendant under "due process" in a statutory proceeding.

In the case of true crimes "At Law", the Citizen Karl Alan Schonwalder enjoys all his fundamental rights as guaranteed by the State and Federal Constitutions, including both "substantive" and "procedural" due process. In contrast, when regulatory offenses "of a criminal nature" are involved, the statutory defendant cannot demand constitutional protections, since only certain "civil rights" have been granted in these actions, and only "procedural due process", consisting of the right to be heard on the facts alone, is allowed. Constitutional protections and substantive due process are noticeably absent. Therefore, the Court must be seated in some jurisdiction other than "At Law", in order to hear an alleged violation of a regulatory statute.

9.      The Accused Citizen Karl Alan Schonwalder, hereby places all parties and the Court on NOTICE, that he is not a "citizen of the United States" under the so-called 14th Amendment, i.e., a juristic person or a franchised person who can be compelled to perform under the regulatory Florida Revised Statutes, which is civil in nature. Moreover, the Accused Citizen Karl Alan Schonwalder hereby challenges the In Personam jurisdiction of the state court with this contrary conclusion of law. This Court is now mandated to seat on the Law side of its capacity to hear evidence of the status of the Accused Citizen.

10.     The Accused Citizen Karl Alan Schonwalder contends that the STATE OF FLORIDA made a false conclusion of law in an administrative capacity when it first brought this action before the state court, and in so doing failed to impart jurisdiction upon this Court to seat and hear this matter in a jurisdiction of legislative equity.

11.     The Accused Citizen Karl Alan Schonwalder now demands that the attorney for the Plaintiff in this matter step forward with an offer of proof that the Accused Citizen Karl Alan Schonwalder, has lost his status as a free Citizen, and is now a "resident" of this State who can be compelled to perform to the letter of every civil statute because he is either an immigrant alien, a statutory resident (14th Amendment citizen), a juristic person (corporation), or an enfranchised person (i.e., one who has knowingly, willingly and voluntarily entered into an agreement for the exercise of a privilege or the receipt of a benefit and for the attendant considerations carried with the grant of that privilege or benefit) or one in Admiralty/Maritime commission who must answer as indicated by judge Komanski in his ORDER ON SUPERSEDEAS BOND dated 8/10/2011.

12.     Once jurisdiction is challenged, this Court must sit on the Law side of its jurisdiction as a neutral arbitrator, before the allegations of statutory wrongdoing can proceed.

13.     The Accused Citizen Karl Alan Schonwalder requires that the state court take judicial notice that he has been compelled to enter the state court to answer allegations, and contends that the allegations are founded upon false conclusions of law. The Memorandum of Law which follows will set forth the position of the Accused Citizen Karl Alan Schonwalder, and the record will show that no evidence is before the state court which contradicts the position of Citizen Karl Alan Schonwalder, except a mere fiction of law. This fiction of law cannot stand in the face of a clear and direct challenge.

## ARGUMENT

1.      The Constitution of the United States of America (1787) is the supreme Law of the Land. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." The Constitution of State of

Florida must be construed in harmony with the supreme Law of the Land otherwise, the State of Florida has violated its solemn contract with the Union of States known as the United States of America, and the question raised herein becomes one which is a proper original action before the Supreme Court of the United States, sitting in an Article 3 capacity. The Holy Bible is the basis of the supreme Law of the Land (Public Law 97-280) and is applied in the instant case at law.

2. An employee of the STATE OF FLORIDA has submitted allegations in what amounts to a "Bill of Pains and Penalties" alleging that I, Karl Alan Schonwalder [Karl Alan Schoenwaler <sic>; Kail Alan Schoenwaler <sic.], have somehow failed to perform according to the terms of some agreement for specific performance on my part.

3. By submitting this Bill of Pains and Penalties, the individual in question has accused Karl Alan Schonwalder of failing to perform specifically to some legislative statute which is being presented as evidence of the law. Statutes are not laws; they are administrative regulations which are civil in nature, even when they carry sanctions of a criminal nature, unless there is an injured party.

4. Thus, because of this unsupported conclusion of law, and because the STATE OF FLORIDA has administratively decided that the Accused is subject to the statutes in question, the Accused Citizen holds that a contrary conclusion of law exists to challenge the jurisdiction of this Court. Therefore, this Court must now sit in a neutral position, on the Law side of its jurisdiction, to hear and resolve the question of controversial positions of law as they affect its jurisdiction or lack of jurisdiction In Personam.

5. This argument is intended to serve as both a defense "At Law" in this Court, and as the basis of future actions, should it become necessary to appeal the question presented to a higher judicial authority.

6. If the Accused Citizen is correct, and if the state court is sitting to hear the violation of a regulatory statute, then it is possible that the judges of the state court, in hearing their matter, are acting in an administrative capacity rather than a judicial capacity. This issue is discussed in detail in the Memorandum which follows.

7. This Court is placed sitting and hearing this issue "At Law" to uphold and defend the Constitutions of the United States of America (1787) and Florida state. The State of Florida Prosecutor in this action is specifically placed on NOTICE that s/he carries no shirttail immunity should s/he continue to prosecute, in the absence of a determination "At Law" of the question presented herein before trial.

This Signer acknowledges that the foregoing as true correct, certain, and materially completed, relevant and not misleading, on this 17 day of October in the year of Yahushua 2011 on Palm Beach County Florida

Signer:

Karl Alan Haus von Schonwalder, unrepresented, sui juris

Mail: c/o 8904 Southwest 22nd Street, Suite F, Boca Raton, Florida, Without the United States, Without State of Florida

**MEMORANDUM OF LAW BRIEF IN SUPPORT OF NOTICE FOR DISMISSAL FOR LACK OF JURISDICTION**

Accused, Karl Alan Schonwalder, appearing specially and not generally nor voluntarily, but under threat of arrest if he failed to do so, with this "MEMORANDUM OF LAW BRIEF IN SUPPORT OF NOTICE FOR DISMISSAL FOR LACK OF JURISDICTION," stating as follows:

**PART – 1 – RELIGIOUS MEMORANDUM**

The most sacred of all liberties found in the United States of America is religious liberty. The Constitution for the United States of America has this to say about Religious practices:

> **Amendment 1-** "Congress may not make any law that sets up any religion, or interferes with any religious practice..."

It does not say anything about separation of church and state as most attorneys have been taught. In reality, the State of Florida has set up a religion and is now demanding that we bow down to it which our religious beliefs absolutely abhor; thereby interfering with our religious practices.

According to Exodus 23:24-25, 32; Leviticus 18:3; II Kings 17:7-8, 13-15, 19 we as Yah's people are not to worship the nations' elohims (magistrates); serve them or follow their practices... 32 We are not to make a covenant (contract) with them or with their elohims (magistrates); otherwise they will make us sin against Yah by ensnaring us to serve their elohims (magistrates) and not obey Yah's laws.

A maxim of law is that if Yah's laws and the state's laws conflict, Yah's laws WILL be obeyed. To obey the Florida Statutes in regards to licensing and registering our private property with them would be to violate Yah's laws. If we have the freedom to practice our religion which by the very nature of Yah and His word should not harm anyone, then we cannot get the state licenses (making contracts with another nation).

To get a license under the Florida Statutes or any state statute means that we would be lying since to get a license means that we would need a license to do something that is unlawful to begin with. So to be lawful would require that we obey Yah's laws, supported by the Constitution for the United States of America and United States Supreme Court and NOT get a license.

We also cannot register our private automobiles with the state. By registering our private property with the state we would be entering into a custodial trust whereby the state would then become the holders in due course of our once private property and be the beneficiaries thereof. The state would then have the right to take our private property and use it to pay the state's debts whether public or private according to the state statutes. When entering into a custodial trust only one party needs to know that a trust was entered into and it is obviously not the People but the state that knows what they are insidiously doing to the People.

We therefore cannot conscientiously register our automobiles with the state as the state would then be demanding that we hand over our private property to them, thus eliminating our freedom to own property. They would also be demanding that we bow down to them and their demands that they have control over us and our private property. Yah forbid! The scripture says in Exodus 19:5, Psalm 89:11 and Psalm 24:1 that Yahuah, our heavenly father, owns everything on earth and in the heavens.

You may say that man must obey this world's governments but Yah's word says in *Romans 13:1-2, " Let every spirit obey the higher jurisdiction. There is no jurisdiction if it is not ruled by Yahuah. But if they be of Yahuah, they are ordained by Him. Therefore whoever resists the arrangement or institution of Yahuah's power and stands against it shall receive damnation (the punishment for the crime) to himself."* It is not us who are guilty of criminal actions but those that support the state governments that deny and rule against the laws of Yah.

**PART – 2 – SECULAR MEMORANDUM**

If ever a judge understood the public's right to use the public roads, it was Justice Tolman of the Supreme Court of the State of Washington. Justice Tolman stated:

> "Complete freedom of the highways is so old and well established a blessing that we have forgotten the days of the Robber Barons and toll roads, and yet, under an act like this, arbitrarily administered, the highways may be completely monopolized, if, through lack of interest, the people submit, then they may look to see the most sacred of their liberties taken from them one by one, by more or less rapid encroachment." Robertson vs. Department of Public Works, 180 Wash 133, 147.

The words of Justice Tolman ring most prophetically in the ears of Citizens throughout the country today as the use of the public roads has been monopolized by the very entity which has been empowered to stand guard over our freedoms, i.e., that of state government.

**RIGHTS**

The "most sacred of liberties" of which Justice Tolman spoke was personal liberty. The definition of personal liberty is:

> "Personal liberty, or the Right to enjoyment of life and liberty, is one of the fundamental or natural Rights, which has been protected by its inclusion as a guarantee in the various constitutions, which is not derived from, or dependent on, the U.S. Constitution, which may not be submitted to a vote and may not depend on the outcome of an election. It is one of the most sacred and valuable Rights, as sacred as the Right to private property...and is regarded as inalienable." 16 C.J.S., Constitutional Law, Sect.202, p.987.

This concept is further amplified by the definition of personal liberty:

> "Personal liberty largely consists of the Right of locomotion -- to go where and when one pleases -- only so far restrained as the Rights of others may make it necessary for the welfare of all other citizens. The Right of the Citizen to travel upon the public highways and to transport his property thereon, by horsedrawn carriage, wagon, or automobile, is not a mere privilege which may be permitted or prohibited at will, but the common Right which he has under his Right to life, liberty, and the pursuit of happiness. Under this Constitutional guarantee one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places, and while conducting himself in an

orderly and decent manner, neither interfering with nor disturbing another's Rights, he will be protected, not only in his person, but in his safe conduct." [emphasis added] II Am.Jur. (1st) Constitutional Law, Sect.329, p.1135. ....and further... "Personal liberty -- consists of the power of locomotion, of changing situations, of removing one's person to whatever place one's inclination may direct, without imprisonment or restraint unless by due process of law." 1 Blackstone's Commentary 134; Hare, Constitution__.777; Bovier's Law Dictionary, 1914 ed., Black's Law Dictionary, 5th ed.

Justice Tolman was concerned about the State prohibiting the Citizen from the "most sacred of his liberties," the Right of movement, the Right of moving one's self from place to place without threat of imprisonment, the Right to use the public roads in the ordinary course of life.

All roads in the United States have been deemed "channels of Interstate commerce" by the Supreme Court, and because of that, local and State laws are trumped by Federal Laws, and that in the Federal Laws a "Motor Vehicle" is a "Commercial Vehicle."

When the State allows the formation of a corporation it may control its creation by establishing guidelines (statutes) for its operation (charters). Corporations who use the roads in the course of business do not use the roads in the ordinary course of life. There is a difference between a corporation and an individual. The United States Supreme Court has stated:

"...We are of the opinion that there is a clear distinction in this particular between an individual and a corporation, and that the latter has no right to refuse to submit its books and papers for examination on the suit of the State. The individual may stand upon his Constitutional Rights as a Citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the State or to his neighbors to divulge his business, or to open his doors to investigation, so far as it may tend to incriminate him. He owes no such duty to the State, since he receives nothing therefrom, beyond the protection of his life, liberty, and property. His Rights are such as the law of the land long antecedent to the organization of the state, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his Rights are the refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under warrant of law. He owes nothing to the public so long as he does not trespass upon their rights.

"Upon the other hand, the corporation is a creature of the state. It is presumed to be incorporated for the benefit of the public. It receives certain special privileges and franchises, and holds them subject to the laws of the state and the limitations of its charter. Its rights to act as a corporation are only preserved to it so long as it obeys the laws of its creation. There is a reserved right in the legislature to investigate its contracts and find out whether it has exceeded its powers. It would be a strange anomaly to hold that the State, having chartered a corporation to make use of certain franchises, could not in exercise of its sovereignty inquire how those franchises had been employed, and whether they had been abused, and demand the production of corporate books and papers for that purpose." [emphasis added] Hale vs. Hinkel, 201 US 43, 74-75.

Corporations engaged in mercantile equity fall under the purview of the State's admiralty jurisdiction, and the public at large must be protected from their activities, as they (the corporations) are engaged in business for profit. The States admiralty jurisdiction is confirmed where judge Komanski said in his ORDER ON SUPERSEDEAS BOND dated August 10, 2011 saying: "prior nonsensical attacks on the judicial system, the laws of the State of Florida, the United States and **Maritime law**."(emphasis added)

"...Based upon the fundamental ground that the sovereign state has the plenary control of the streets and highways in the exercise of its police power (see police power, infra.), may absolutely prohibit the use of the streets as a place for the prosecution of a private business for gain. They all recognize the fundamental distinction between the ordinary Right of

the Citizen to use the streets in the usual way and the use of the streets as a place of business or a main instrumentality of business for private gain. The former is a common Right, the latter is an extraordinary use. As to the former the legislative power is confined to regulation, as to the latter it is plenary and extends even to absolute prohibition. Since the use of the streets by a common carrier in the prosecution of its business as such is not a right but a mere license of privilege." Hadfield vs. Lundin, 98 Wash 657l, 168, p.516.

It will be necessary to review early cases and legal authority in order to reach a lawfully correct theory dealing with this Right or "privilege." We will attempt to reach a sound conclusion as to what is a "Right to use the road" and what is a "privilege to use the road". Once reaching this determination, we shall then apply those positions to modern case decision.

"Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them." Miranda vs. Arizona, 384 US 436, 491. ...and... "The claim and exercise of a constitutional Right cannot be converted into a crime." Miller vs. U.S., 230 F. 486, 489. ...and... "There can be no sanction or penalty imposed upon one because of this exercise of constitutional Rights." Snerer vs. Cullen, 481 F. 946.

Streets and highways are established and maintained for the purpose of travel and transportation by the public. Such travel may be for business or pleasure.

"The use of the highways for the purpose of travel and transportation is not a mere privilege, but a common and fundamental Right of which the public and the individual cannot be rightfully deprived." [emphasis added] Chicago Motor Coach vs. Chicago, 169 NE 22; Ligare vs. Chicago, 28 NE 934; Boon vs. Clark, 214 SSW 607; 25 Am.Jur. (1st) Highways Sect.163. ...and..."The Right of the Citizen to travel upon the public highways and to transport his property thereon, either by horse drawn carriage or by automobile, is not a mere privilege which a city can prohibit or permit at will, but a common Right which he has under the right to life, liberty, and the pursuit of happiness." [emphasis added] Thompson vs. Smith, 154 SE 579.

So we can see that a Citizen has a Right to travel upon the public highways by automobile and the Citizen cannot be rightfully deprived of his Liberty. So where does the misconception that the use of the public road is always and only a privilege come from?

"...For while a Citizen has the Right to travel upon the public highways and to transport his property thereon, that Right does not extend to the use of the highways, either in whole or in part, as a place for private gain. For the latter purpose no person has a vested right to use the highways of the state, but is a privilege or a license which the legislature may grant or withhold at its discretion." State vs. Johnson, 243 P. 1073; Hadfield, supra; Cummins vs. Homes, 155 P. 171; Packard vs. Banton, 44 S.Ct. 256; and other cases too numerous to mention.

Here the court held that a Citizen has the Right to travel upon the public highways, but that he did not have the right to conduct business upon the highways. On this point of law all authorities are unanimous.

"Heretofore the court has held, and we think correctly, that while a Citizen has the Right to travel upon the public highways and to transport his property thereon, that Right does not extend to the use of the highways, either in whole or in part, as a place of business for private gain." Barney vs. Board of Railroad Commissioners, 17 P.2d 82; Willis vs. Buck, 263 P.1 982. and... "The right of the citizen to travel upon the highway and to transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business for private gain in the running of a stagecoach or omnibus." State vs. City of Spokane, 186 P. 864.

What is this Right of the Citizen which differs so "radically and obviously" from one who uses the highway as a place of business? Who better to enlighten us than Justice Tolman of the Supreme Court of Washington State? In State vs. City of Spokane, supra, the Court also noted a very "radical and obvious" difference, but went on to explain just what the difference is:

> "The former is the usual and ordinary right of the Citizen, a common right to all, while the latter is special, unusual, and extraordinary." and... "This distinction, elementary and fundamental in character, is recognized by all the authorities." State vs. City of Spokane, supra.

This position does not hang precariously upon only a few cases, but has been proclaimed by an impressive array of cases ranging from the state courts to the federal courts.

> "the right of the Citizen to travel upon the highway and to transport his property thereon in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain in the running of a stagecoach or omnibus. The former is the usual and ordinary right of the Citizen, a right common to all, while the latter is special, unusual, and extraordinary." Ex Parte Dickey, (Dickey vs. Davis), 85 SE 781. ...and... "The right of the Citizen to travel upon the public highways and to transport his property thereon, in the ordinary course of life and business, is a common right which he has under the right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety. It includes the right, in so doing, to use the ordinary and usual conveyances of the day, and under the existing modes of travel, includes the right to drive a horse drawn carriage or wagon thereon or to operate an automobile thereon, for the usual and ordinary purpose of life and business." Teche Lines vs. Danforth, Miss., 12 S.2d 784; Thompson vs. Smith, supra.

There is no dissent among various authorities as to this position. (See Am.Jur. [1st] Const. Law, 329 and corresponding Am. Jur. [2nd].)

> "Personal liberty -- or the right to enjoyment of life and liberty -- is one of the fundamental or natural rights, which has been protected by its inclusion as a guarantee in the various constitutions, which is not derived from nor dependent on the U.S. Constitution... It is one of the most sacred and valuable rights [remember the words of Justice Tolman, supra.] as sacred as the right to private property...and is regarded as inalienable." 16 C.J.S. Const. Law, Sect. 202, p.987.

As we can see, the distinction between a "Right" to use the public roads and a "privilege" to use the public roads is drawn upon the line of "using the road as a place of business" and the various state courts have held so. But what have the U.S. courts held on this point?

> "First, it is well established law that the highways of the state are public property, and their primary and preferred use is for private purposes, and that their use for purposes of gain is special and extraordinary which, generally at least, the legislature may prohibit or condition as it sees fit." Stephenson vs. Rinford, 287 US 251; Pachard vs Banton, 264 US 140, and cases cited; Frost and F. Trucking Co. vs. Railroad Commission, 271 US 592; Railroad commission vs. Inter-City Forwarding Co., 57 SW.2d 290; Parlett Cooperative vs. Tidewater Lines, 164 A. 313.

So what is a privilege to use the roads? By now it should be apparent even to the "learned" that an attempt to use the road as a place of business is a privilege. The distinction must be drawn between...

1. Travelling upon and transporting one's property upon the public roads, which is our Right; and...

2. Using the public roads as a place of business or a main instrumentality of business, which is a privilege.

"[The roads]...are constructed and maintained at public expense, and no person therefore, can insist that he has, or may acquire, a vested right to their use in carrying on a commercial business." Ex Parte Sterling, 53 SW.2d 294; Barney vs. Railroad Commissioners, 17 P.2d 82; Stephenson vs. Binford, supra.

"When the public highways are made the place of business the state has a right to regulate their use in the interest of safety and convenience of the public as well as the preservation of the highways." Barney vs. Railroad Commissioners, supra.

"[The state's] right to regulate such use is based upon the nature of the business and the use of the highways in connection therewith." Ibid.

"We know of no inherent right in one to use the highways for commercial purposes. The highways are primarily for the use of the public, and in the interest of the public, the state may prohibit or regulate...the use of the highways for gain." Robertson vs. Dept. of Public Works, supra.

There should be considerable authority on a subject as important as this deprivation of the liberty of the individual "using the roads in the ordinary course of life and business." However, it should be noted that extensive research has not turned up one case or authority acknowledging the state's power to convert the individual's right to travel upon the public roads into a "privilege."

Therefore, it is concluded that the Citizen does have a "Right" to travel and transport his property upon the public highways and roads and the exercise of this Right is not a "privilege."

It is important to reiterate again that: "This Constitution (for the United States of America), and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

## PART – 3 - DEFINITIONS

In order to understand the correct application of the statute in question, we must first define the terms used in connection with this point of law. As will be shown, many terms used today do not, in their legal context, mean what we assume they mean, thus resulting in the misapplication of statutes in the instant case.

## AUTOMOBILE AND MOTOR VEHICLE

There is a clear distinction between an automobile and a motor vehicle. An automobile has been defined as:

"The word 'automobile' connotes a pleasure vehicle designed for the transportation of persons on highways." American Mutual Liability Ins. Co., vs. Chaput, 60 A.2d 118, 120; 95 NH 200.

While the distinction is made clear between the two as the courts have stated:

"A motor vehicle or automobile for hire is a motor vehicle, other than an automobile stage, used for the transportation of persons for which remuneration is received." International Motor Transit Co. vs. Seattle, 251 P. 120.

"The term `motor vehicle' is different and broader than the word `automobile.'" City of Dayton vs. DeBrosse, 23 NE.2d 647, 650; 62 Ohio App. 232.

The distinction is made very clear in Title 18 USC 31:

"Motor vehicle" means every description or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways in the transportation of passengers, or passengers and property.

"Used for commercial purposes" means the carriage of persons or property for any fare, fee, rate, charge or other considerations, or directly or indirectly in connection with any business, or other undertaking intended for profit.

This distinction is made very clear in the GENERAL LAWS OF THE STATE OF FLORIDA Chapter 6421, Sec. 1 and 7 Cir. 1913:

Sec. 1 "No person, firm or corporation shall engage in or manage any business, profession or occupation mentioned in this Act unless a State license, or a State and County License, or a County license, as the case may be, shall have been procured from the Tax Collector..."

Sec. 7 "Owners or persons in charge of Automobiles or Auto Trucks kept for hire, or rent or used in conveying passengers or freight shall pay for each automobile or truck a license tax as follows:..."

Clearly, an automobile is private property in use for private purposes, while a motor vehicle is a machine which may be used upon the highways for trade, commerce, or hire.

**TRAVEL**

The term "travel" is a significant term and is defined as:

"The term `travel' and `traveler' are usually construed in their broad and general sense...so as to include all those who rightfully use the highways viatically (when being reimbursed for expenses) and who have occasion to pass over them for the purpose of business, convenience, or pleasure." [emphasis added] 25 Am.Jur. (1st) Highways, Sect.427, p.717.

"Traveler -- One who passes from place to place, whether for pleasure, instruction, business, or health." Locket vs. State, 47 Ala. 45; Bovier's Law Dictionary, 1914 ed., p. 3309.

"Travel -- To journey or to pass through or over; as a country district, road, etc. To go from one place to another, whether on foot, or horseback, or in any conveyance as a train, an automobile, carriage, ship, or aircraft; Make a journey." Century Dictionary, p.2034.

Therefore, the term "travel" or "traveler" refers to one who uses a conveyance to go from one place to another, and included all those who use the highways as a matter of Right.

Notice that in all these definitions the phrase "for hire" never occurs. This term "travel" or "traveler" implies, by definition, one who uses the road as a means to move from one place to another.

Therefore, one who uses the road in the ordinary course of life and business for the purpose of travel and transportation is a traveler.

**DRIVE**

Florida § Chapter 322.01 Definitions(15) "Drive" means to operate or be in actual physical control of a motor vehicle in any place open to the general public for purposes of vehicular traffic.

(See "traffic" infra)

**DRIVER**

The term "driver" in contradistinction to "traveler": is defined as:

> "Driver -- One employed in conducting a coach, carriage, wagon, or other vehicle..." Bovier's Law Dictionary, 1914 ed., p. 940.
>
> "Driver. One employed in conducting a coach, carriage, wagon or other vehicle, with horses, mules, or other animals, or a bicycle, tricycle, or motor car..." Black's Law Dictionary, 1915 2nd ed. P. 398

Notice that these definitions include one who is "employed" in conducting a vehicle/motor car. It should be self-evident that this person could not be "travelling" on a journey, but is using the road as a place of business.

**OPERATOR**

Today we assume that a "traveler" is a "driver," and a "driver" is an "operator." However, this is not the case.

> "It will be observed from the language of the ordinance that a distinction is to be drawn between the terms `operator' and `driver'; the `operator' of the service car being the person who is licensed to have the car on the streets in the business of carrying passengers for hire; while the `driver' is the one who actually drives the car. However, in the actual prosecution of business, it was possible for the same person to be both `operator' and `driver.'" Newbill vs. Union Indemnity Co., 60 SE.2d 658.

To further clarify the definition of an "operator" the court observed that this was a vehicle "for hire" and that it was in the business of carrying passengers.

This definition would seem to describe a person who is using the road as a place of business, or in other words, a person engaged in the "privilege" of using the road for gain.

This definition, then, is a further clarification of the distinction mentioned earlier, and therefore:

1. Traveling upon and transporting one's property upon the public roads as a matter of Right meets the definition of a traveler.

2. Using the road as a place of business as a matter of privilege meets the definition of a driver or an operator or both.

**TRAFFIC**

Having defined the terms "automobile," "motor vehicle," "traveler," "driver," and "operator," the next term to define is "traffic":

> "...Traffic thereon is to some extent destructive, therefore, the prevention of unnecessary duplication of auto transportation service will lengthen the life of the highways or reduce the cost of maintenance, the revenue derived by the state...will also tend toward the public welfare by producing at the expense of those operating for private gain, some small part of the cost of repairing the wear..." Northern Pacific R.R. Co. vs. Schoenfeldt, 213 P. 26.

Note: In the above, Justice Tolman expounded upon the key of raising revenue by taxing the "privilege" to use the public roads "at the expense of those operating for gain."

In this case, the word "traffic" is used in conjunction with the unnecessary Auto Transportation Service, or in other words, "vehicles for hire." The word "traffic" is another word which is to be strictly construed to the conducting of business.

> "Traffic -- Commerce, trade, sale or exchange of merchandise, bills, money, or the like. The passing of goods and commodities from one person to another for an equivalent in goods or money..." Bovier's Law Dictionary, 1914 ed., p. 3307.

Here again, notice that this definition refers to one "conducting business." No mention is made of one who is traveling in his automobile. This definition is of one who is engaged in the passing of a commodity or goods in exchange for money, i.e.., vehicles for hire.

Furthermore, the word "traffic" and "travel" must have different meanings which the courts recognize. The difference is recognized in Ex Parte Dickey, supra:

> "...in addition to this, cabs, hackney coaches, omnibuses, taxicabs, and hacks, when unnecessarily numerous, interfere with the ordinary traffic and travel and obstruct them."

The court, by using both terms, signified its recognition of a distinction between the two. But, what was the distinction? We have already defined both terms, but to clear up any doubt:

> "The word `traffic' is manifestly used here in secondary sense, and has reference to the business of transportation rather than to its primary meaning of interchange of commodities." Allen vs. City of Bellingham, 163 P. 18.

Here the Supreme Court of the State of Washington has defined the word "traffic" (in either its primary or secondary sense) in reference to business, and not to mere travel! So it is clear that the term "traffic" is business related and therefore, it is a "privilege." The net result being that "traffic" is brought under the (police) power of the legislature. The term has no application to one who is not using the roads as a place of business.

no fault of their own, instead now busying themselves as they "check" our papers to see that all are properly endorsed by the state?

How much longer will it be before we are forced to get a license for our lawn mowers, or before our wives will need a license for her "blender" or "mixer?" They all have motors on them and the state can always use the revenue.

**POLICE POWER**

The confusion of the police power with the power of taxation usually arises in cases where the police power has affixed a penalty to a certain act, or where it requires licenses to be obtained and a certain sum be paid for certain occupations. The power used in the instant case cannot, however, be the power of taxation since an attempt to levy a tax upon a Right would be open to Constitutional objection. (See "taxing power," infra.) Each law relating to the use of police power must ask three questions:

1. "Is there threatened danger?"

and

2. "Does a regulation involve a Constitutional Right?"

and

3. "Is this regulation reasonable?" People vs. Smith, 108 Am.St.Rep. 715; Bovier's Law Dictionary, 1914 ed., under "Police Power."

When applying these three questions to the statutes in question, some very important issues emerge.

First, "is there a threatened danger" in the individual using his automobile on the public highways, in the ordinary course of life and business?

The answer is No! There is nothing inherently dangerous in the use of an automobile when it is carefully managed. Their guidance, speed, and noise are subject to a quick and easy control, under a competent and considerate manager, it is as harmless on the road as a horse and buggy.

It is the manner of managing the automobile, and that alone, which threatens the safety of the public. The ability to stop quickly and to respond quickly to guidance would seem to make the automobile one of the least dangerous conveyances. (See Yale Law Journal, December, 1905.)

"The automobile is not inherently dangerous." Cohens vs. Meadow, 89 SE 876; Blair vs. Broadmore, 93 SE 532.

**LICENSE**

Florida § Chapter 322.01 Definitions (16) "Driver's license" means a certificate which, subject to all other requirements of law, authorizes an individual to drive a motor vehicle. (See "GENERAL LAWS OF THE STATE OF FLORIDA Chapter 6421, Sec. 1 and 7 Cir. 1913" infra.)

It is clear that Florida's definitions and meaning for the above is for commerce not travel. It seems only proper to define the word "license," as the definition of this word will be extremely important in understanding the statutes as they are properly applied:

> "The permission, by competent authority to do an act which without permission, would be illegal, a trespass, or a tort." People vs. Henderson, 218 NW.2d 2, 4.
>
> "Leave to do a thing which licensor could prevent." Western Electric Co. vs. Pacent Reproducer Corp., 42 F.2d 116, 118.

In order for these two definitions to apply in this case, the state would have to take up the position that the exercise of a Constitutional Protection to use the public roads in the ordinary course of life and business is illegal, a trespass, or a tort, which the state could then regulate or prevent.

This position, however, would raise magnitudinous Constitutional questions as this position would be diametrically opposed to fundamental Constitutional Law. (See "Conversion of a Right to a Crime," infra.)

In the instant case, the proper definition of a "license" is:

> "a permit, granted by an appropriate governmental body, generally for consideration, to a person, firm, or corporation, to pursue some occupation or to carry on some business which is subject to regulation under the police power." [emphasis added] Rosenblatt vs. California State Board of Pharmacy, 158 P.2d 199, 203.

This definition would fall more in line with the "privilege" of carrying on business on the streets.

Most people tend to think that "licensing" is imposed by the state for the purpose of raising revenue, yet there may well be more subtle reasons contemplated; for when one seeks permission from someone to do something he invokes the jurisdiction of the "licensor" which, in this case, is the state. In essence, the licensee may well be seeking to be regulated by the "licensor."

> "A license fee is a charge made primarily for regulation, with the fee to cover costs and expenses of supervision or regulation." State vs. Jackson, 60 Wisc.2d 700; 211 NW.2d 480, 487.

The fee is the price; the regulation or control of the licensee is the real aim of the legislation.

Are these licenses really used to fund legitimate government, or are they nothing more than a subtle introduction of police power into every facet of our lives? Have our "enforcement agencies" been diverted from crime prevention, perhaps through

To deprive all persons of the Right to use the road in the ordinary course of life and business, because one might, in the future, become dangerous, would be a deprivation not only of the Right to travel, but also the Right to due process. (See "Due Process," infra.)

Next, does the regulation involve a Constitutional Right?

This question has already been addressed and answered in this brief, and need not be reinforced other than to remind the state court that this Citizen does have the Right to travel upon the public highway by automobile in the ordinary course of life and business. It can therefore be concluded that this regulation does involve a Constitutional Right.

The third question is the most important in this case. "Is this regulation reasonable?"

The answer is No! It will be shown later in "Regulation," infra., that the licensing and registration statutes are oppressive and could be effectively administered by less oppressive means.
Although the Accused is not a Fourteenth Amendment citizen, I will utilize its reference herein for identification purposes only. Although the Fourteenth Amendment does not interfere with the proper exercise of the police power, in accordance with the general principle that the power must be exercised so as not to invade unreasonably the rights guaranteed by the United States Constitution, it is established beyond question that every state power, including the police power, is limited by the Fourteenth Amendment (and others) and by the inhibitions there imposed.

Moreover, the ultimate test of the propriety of police power regulations must be found in the Fourteenth Amendment, since it operates to limit the field of the police power to the extent of preventing the enforcement of statutes in denial of Rights that the Amendment protects. (See Parks vs. State, 64 NE 682.)

> "With regard particularly to the U.S. Constitution, it is elementary that a Right secured or protected by that document cannot be overthrown or impaired by any state police authority." Connolly vs. Union Sewer Pipe Co., 184 US 540; Lafarier vs. Grand Trunk R.R. Co., 24 A. 848; O'Neil vs. Providence Amusement Co., 108 A. 887.
>
> "The police power of the state must be exercised in subordination to the provisions of the U.S. Constitution." [emphasis added] Panhandle Eastern Pipeline Co. vs. State Highway Commission, 294 US 613; Bacahanan vs. Wanley, 245 US 60.
>
> "It is well settled that the Constitutional Rights protected from invasion by the police power, include Rights safeguarded both by express and implied prohibitions in the Constitutions." Tiche vs. Osborne, 131 A. 60.
>
> "As a rule, fundamental limitations of regulations under the police power are found in the spirit of the Constitutions, not in the letter, although they are just as efficient as if expressed in the clearest language." Mehlos vs. Milwaukee, 146 NW 882.

As it applies in the instant case, the language of the Fifth Amendment is clear:

No person shall be...deprived of Life, Liberty, or Property without due process of law.

As has been shown, the courts at all levels have firmly established an absolute Right to travel.

In the instant case, the state, by applying commercial statutes to all entities, People, man, woman, natural and artificial persons alike, has deprived this free and natural flesh and blood man of the Right of Liberty, without cause and without due process of law.

**DUE PROCESS**

> "The essential elements of due process of law are...Notice and The Opportunity to defend." Simon vs. Craft, 182 US 427.

Yet, not one individual has been given notice of the loss of his/her Right, let alone before signing the license (contract). Nor was the Citizen given any opportunity to defend against the loss of his/her right to travel, by automobile, on the highways, in the ordinary course of life and business. This amounts to an arbitrary deprivation of Liberty.

> "There should be no arbitrary deprivation of Life or Liberty..." Barbour vs. Connolly, 113 US 27, 31; Yick Wo vs. Hopkins, 118 US 356. ...and... "The right to travel is part of the Liberty of which a citizen cannot be deprived without due process of law under the Fifth Amendment. This Right was emerging as early as the Magna Carta." Kent vs. Dulles, 357 US 116 (1958).

The focal point of this question of police power and due process must balance upon the point of making the public highways a safe place for the public to travel. If a man travels in a manner that creates actual damage, an action would lie (civilly) for recovery of damages. The state could then also proceed against the individual to deprive him of his Right to use the public highways, for cause. This process would fulfill the due process requirements of the Fifth Amendment while at the same time insuring that Rights protected by the U.S. Constitution and the state constitutions would be guaranteed.

But unless or until harm or damage (a crime) is committed, there is no cause for interference in the private affairs or actions of a Citizen.

One of the most famous and perhaps the most quoted definitions of due process of law, is that of Daniel Webster in his Dartmouth College Case (4 Wheat 518), in which he declared that by due process is meant "a law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial." (See also State vs. Strasburg, 110 P. 1020; Dennis vs. Moses, 52 P. 333.)

Somewhat similar is the statement that is a rule as old as the law that "no one shall be personally bound (restricted) until he has had his day in court," by which is meant, until he has been duly cited to appear and has been afforded an opportunity to be heard. Judgment without such citation and opportunity lacks all the attributes of a judicial determination; it is judicial usurpation and it is oppressive and can never be upheld where it is fairly administered. (12 Am.Jur. [1st] Const. Law, Sect.573, p.269.)

Note: This sounds like the process used to deprive one of the "privilege" of operating a motor vehicle "for hire." It should be kept in mind, however, that we are discussing the arbitrary deprivation of the Right to use the road that all citizens have "in common."

The futility of the state's position can be most easily observed in the 1959 Washington Attorney General's opinion on a similar issue:

> "The distinction between the Right of the Citizen to use the public highways for private, rather than commercial purposes is recognized..." ...and... "Under its power to regulate private uses of our highways, our legislature has required that motor vehicle operators be licensed (I.C. 49-307). Undoubtedly, the primary purpose of this requirement is to insure, as far as possible, that all motor vehicle operators will be competent and qualified, thereby reducing the potential hazard or risk of harm, to which other users of the highways might otherwise be subject. But once having complied with this regulatory provision, by obtaining the required license, a motorist enjoys the privilege of traveling freely upon the highways..." Washington A.G.O. 59-60 No. 88, p. 11.

This alarming opinion appears to be saying that every person using an automobile as a matter of Right, must give up the Right and convert the Right into a privilege. This is accomplished under the guise of regulation. This statement is indicative of the insensitivity, even the ignorance, of the government to the limits placed upon governments by and through the several constitutions.

This legal theory may have been able to stand in 1959; however, as of 1966, in the United States Supreme Court decision in Miranda, even this weak defense of the state's actions must fall.

> "Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them." Miranda vs. Arizona, 384 US 436, 491.

Thus the legislature does not have the power to abrogate the Citizen's Right to travel upon the public roads, by passing legislation forcing the citizen to waive his Right and convert that Right into a privilege.

Furthermore, we have previously established that this "privilege" has been defined as applying only to those who are "conducting business in the streets" or "operating for-hire vehicles."

The legislature has attempted, by legislative fiat and/or by revising state laws, to deprive the Citizen of his Right to use the roads in the ordinary course of life and business, without affording the Citizen the safeguard of "due process of law." This has been accomplished under supposed powers of regulation.

**REGULATION**

> "In addition to the requirement that regulations governing the use of the highways must not be vocative of constitutional guarantees, the prime essentials of such regulation are reasonableness, impartiality, and definiteness or certainty." 25 Am.Jur. (1st) Highways, Sect.260. ...and... "Moreover, a distinction must be observed between the regulation of an activity which may be engaged in as a matter of right and one carried on by government sufferance of permission." Davis vs. Massachusetts, 167 US 43; Pachard vs Banton, supra.

One can say for certain that these regulations are impartial since they are being applied to all, even though they are clearly beyond the limits of the legislative powers. However, we must consider whether such regulations are reasonable and vocative-vocative of constitutional guaranteed protections.

First, let us consider the reasonableness of this statute requiring all persons to be licensed (presuming that we are applying this statute to all persons using the public roads). In determining the reasonableness of the statute we need only ask two questions:

1.  Does the statute accomplish its stated goal?

The answer is No!

The attempted explanation for this regulation "to insure the safety of the public by insuring, as much as possible, that all are competent and qualified."

However, one can keep his license without retesting, from the time he/she is first licensed until the day he/she dies, without regard to the competency of the person, by merely renewing said license before it expires. It is therefore possible to completely skirt the goal of this attempted regulation, thus proving that this regulation does not accomplish its goal.

Furthermore, by testing and licensing, the state gives the appearance of underwriting the competence of the licensees, and could therefore be held liable for failures, accidents, etc. caused by licensees.

2.  Is the statute reasonable?

The answer is No!

This statute cannot be determined to be reasonable since it requires the Citizen to give up his or her natural Right to travel unrestricted in order to accept the privilege. The purported goal of this statute could be met by much less oppressive regulations, i.e., competency tests and certificates of competency before using an automobile upon the public roads. (This is exactly the situation in the aviation sector.)

But isn't this what we have now?

The answer is No! The real purpose of this license is much more insidious. When one signs the license, he/she gives up his/her Constitutional Right/protections to travel in order to accept and exercise a privilege. After signing the license, a quasi-contract, the Citizen has to give the state his/her consent to be prosecuted for constructive crimes and quasi-criminal actions where there is no harm done and no damaged property. Similarly, (as mentioned above and reiterated here) the Registration of a private automobile converts the property to the state by "entering it into a custodial trust whereby the state would then become the holders in due course of our once private property and be the beneficiaries thereof. The state would then have the right to take our private property and use it to pay the state's debts whether public or private according to the state statutes.

When entering into a custodial trust only one party needs to know that a trust was entered into and it is obviously not the People but the state that knows what they are insidiously doing to the People."

These prosecutions take place without affording the Citizen of their Constitutional Rights/protections and guarantees such a the Right/protection to a trial by jury of twelve persons and the Right/protection to Assistance of Counsel, as well as the normal safeguards such as proof of intent and an injured party and/or damaged property and a grand jury indictment. These unconstitutional prosecutions take place because the Citizen is exercising a privilege and has given his/her "implied consent" to legislative enactments designed to control interstate commerce, a regulated enterprise under the police power of the state.

We must now conclude that the Citizen is forced to give up Constitutional protected guarantees of "Right(s)" in order to exercise his state "privilege" to travel upon the public highways in the ordinary course of life and business.

## SURRENDER OF RIGHTS

A Citizen cannot be forced to give up his/her Rights in the name of regulation.

> "...the only limitations found restricting the right of the state to condition the use of the public highways as a means of vehicular transportation for compensation are (1) that the state must not exact of those it permits to use the highways for hauling for gain that they surrender any of their inherent U.S. Constitutional Rights as a condition precedent to obtaining permission for such use..." [emphasis added] Riley vs. Laeson, 142 So. 619; Stephenson vs. Binford, supra.

If one cannot be placed in a position of being forced to surrender Rights in order to exercise a privilege, how much more must this maxim of law, then, apply when one is simply exercising (putting into use) a Right?

> "To be that statute which would deprive a Citizen of the rights of person or property, without a regular trial, according to the course and usage of the ... law, would not be the law of the land." Hoke vs. Henderson, 15 NC 15. ...and... "We find it intolerable that one Constitutional Right should have to be surrendered in order to assert another." Simons vs. United States, 390 US 389.

Since the state requires that one give up Rights in order to exercise the privilege of driving, the regulation cannot stand under the police power, due process, or regulation, but must be exposed as a statute which is oppressive and one which has been misapplied to deprive the Citizen of Rights guaranteed by the United States Constitution and the state constitutions.

## TAXING POWER

> "Any claim that this statute is a taxing statute would be immediately open to severe Constitutional objections. If it could be said that the state had the power to tax a Right, this would enable the state to destroy Rights guaranteed by the constitution through the use of oppressive taxation. The question herein, is one of the state taxing the Right to travel by the ordinary modes of the day, and whether this is a legislative object of the state taxation.
>
> The views advanced herein are neither novel nor unsupported by authority. The question of taxing power of the states has been repeatedly considered by the Supreme Court. The Right of the state to impede or embarrass the Constitutional operation of the United States of America Government or the Rights which the Citizen holds under it, has been uniformly denied." McCulloch vs. Maryland, 4 Wheat 316.

K

The power to tax is the power to destroy, and if the state is given the power to destroy Rights through taxation, the framers of the Constitution wrote that document in vain.

> "...It may be said that a tax of one dollar for passing through the state cannot sensibly affect any function of government or deprive a Citizen of any valuable Right. But if a state can tax...a passenger of one dollar, it can tax him a thousand dollars." Crandall vs. Nevada, 6 Wall 35, 46. ...and... "If the Right of passing through a state by a Citizen of the United States is one guaranteed by the Constitution, it must be sacred from state taxation." Ibid., p.47.

Therefore, the Right of travel must be kept sacred from all forms of state taxation and if this argument is used by the state as a defense of the enforcement of this statute, then this argument also must fail.

**CONVERSION OF A RIGHT TO A CRIME**

As previously demonstrated, the Citizen has the Right to travel and to transport his property upon the public highways in the ordinary course of life and business. However, if one exercises this Right to travel (without first giving up the Right and converting that Right into a privilege) the Citizen is by statute, guilty of a crime. This amounts to converting the exercise of a Constitutional Right into a crime.

Recall the Miller vs. U.S. and Snerer vs. Cullen quotes, and, ... "The state cannot diminish Rights of the people." Hurtado vs. California, 110 US 516. ...and... "Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them." Miranda, supra.

Indeed, the very purpose for creating the state under the limitations of the constitution was to protect the rights of the people from intrusion, particularly by the forces of government.

So we can see that any attempt by the legislature to make the act of using the public highways as a matter of Right into a crime, is void upon its face.

Any person who claims his Right to travel upon the highways, and so exercises that Right, cannot be tried for a crime of doing so. And yet, this Freeman stands before this court today to demand that the attorney for the State of Florida prove jurisdiction.

As we have already shown, the term "drive" can only apply to those who are employed in the business of transportation for hire and that same aspect applies to automobiles vs. motor vehicles. It has been shown that freedom includes the Citizens' Right to use the public highways in the ordinary course of life and business without license or regulation by the police powers of the state.

**CONCLUSION**

It is the duty of the Florida state courts to recognize the substance of things and not the mere form.

> "The courts are not bound by mere form, nor are they to be misled by mere pretenses. They are at liberty -- indeed they are under a solemn duty -- to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purported to have been enacted to protect...the public safety, has no real or substantial relation to those objects or is a palpable invasion of Rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." Mulger vs. Kansas, 123 US 623, 661. ...and... "It is the duty of the courts to be watchful for the Constitutional rights of the Citizen and against any stealthy encroachments thereon." Boyd vs. United States, 116 US 616.

The courts are "duty bound" to recognize and stop the "stealthy encroachments" which have been made upon the Citizen's Right to travel and to use the roads to transport his property in the "ordinary course of life and business." (Hadfield, supra.)

Further, the Florida state attorney and courts must recognize that the Right to travel is part of the Liberty of which a Citizen cannot be deprived without specific cause and without the "due process of law" guaranteed in the Fifth Amendment of the Constitution for the United States. (Kent, supra.)

The history of this "invasion" of the Citizen's Right to use the public highways shows clearly that the state legislature simply found a heretofore untapped source of revenue, got greedy, and attempted to enforce a statute in an unconstitutional manner upon those free and natural individuals who have a Right to travel upon the highways. This was not attempted in an outright action, but in a slow, meticulous, calculated encroachment upon the Citizen's Right to travel.

This position must be accepted unless the prosecutor can show his authority for the position that the "use of the road in the ordinary course of life and business" is a privilege.

To rule in any other manner, without clear authority for an adverse ruling, will infringe upon fundamental and basic concepts of Constitutional law. This position, that a Right cannot be regulated under any guise, must be accepted without concern for the monetary loss of the state.

> "Disobedience or evasion of a Constitutional Mandate cannot be tolerated, even though such disobedience may, at least temporarily, promote in some respects the best interests of the public." Slote vs. Examination, 112 ALR 660. ...and... "Economic necessity cannot justify a disregard of Constitutional guarantee." Riley vs. Carter, 79 ALR 1018; 16 Am.Jur. (2nd), Const. Law, Sect.81. ...and... "Constitutional Rights cannot be denied simply because of hostility to their assertions and exercise; vindication of conceded Constitutional Rights cannot be made dependent upon any theory that it is less expensive to deny them than to afford them." Watson vs. Memphis, 375 US 526.

Wherefore, the Court's decision in the instant case must be made without the issue of cost to the state being taken into consideration, as that issue is irrelevant. The state cannot lose money that it never had a right to demand from the "Sovereign People."

Finally, we come to the issue of "public policy." It could be argued that the "licensing scheme" of all persons is a matter of "public policy." However, if this argument is used, it too must fail, as:

> "No public policy of a state can be allowed to override the positive guarantees of the U.S. Constitution." 16 Am.Jur. (2nd), Const. Law, Sect.70.

So even "public policy" cannot abrogate this Citizen's Right to travel and to use the public highways in the ordinary course of life and business.

Therefore, it must be concluded that:

> "We have repeatedly held that the legislature may regulate the use of the highways for carrying on business for private gain and that such regulation is a valid exercise of the police power." Northern Pacific R.R. Co., supra. ...and... "The act in question is a valid regulation, and as such is binding upon all who use the highway for the purpose of private gain." Ibid.

Any other construction of this statute would render it unconstitutional as applied to this Citizen or any free Citizen. The Accused Citizen was not and does not traffic anything nor was he involved in traffic as defined above nor in any legal nor other dictionary. There was no crime committed by the Accused Citizen even if he had been the Traveler on the date in question.

THEREFORE being the Accused Citizen has committed no crime, for there are no injured parties nor complaining parties in law and/or statute standing, causing the state court to lack jurisdiction as shown above, the Accused Citizen, Karl Alan Schonwalder, moves the State of Florida case be dismissed with prejudice in favor of the Accused Citizen. If not dismissed, THE State of Florida attorney must provide proof of jurisdiction. Citizen, Karl Alan Schonwalder, retains his reservation of all rights including, if necessary, a jury trial, without the United States without the State Of Florida.

This Signer acknowledges that the foregoing as true correct, certain, and materially completed, relevant and not misleading, on this 17 day of October in the year of Yahushua 2011 on Palm Beach County Florida.

Signer:
Karl Alan Haus von Schonwalder, unrepresented, sui juris,
Mail: c/o 8904 Southwest 22nd Street, Suite F, Boca Raton, Florida, Without the United States,

**TABLE OF AUTHORITIES; CONSTITUTIONS**

The Holy Bible (King James Authorized version)
The Scriptures 1998
The Jewish Bible (Tenach)
The Declaration of Independence for the United States of America adopted by the Continental Congress on July 4, 1776
Constitution for the United States of America, Amendment 9 16.1
Constitution of the State of Florida Article I § I, II

**MAXIMS OF LAW**

A maxim is so called because its dignity is chiefest, and its authority most certain, and because universally approved of all.
In default of the law, the maxim rules.
It is a perpetual law that no human or positive law can be perpetual.
If you depart from the law you will wander without a guide and everything will be in a state of uncertainty to every one. [Joshua 1:8]
All rules of law are liable to exceptions. [Matthew 12:1-5]

We are all bound to our lawgiver, regardless of our personal interpretation of reality. [Isaiah 33:22, James 4:12]

Legality is not reality

Many things have been introduced into the  , with a view to the public good, which are inconsistent with sound reason. [The law of merchants was merged with the  ]

Those who do not preserve the law of the land, they justly incur the awesome and indelible brand of infamy.

An exception to the rule should not destroy the rule.

It has been said, with much truth, "Where the law ends, tyranny begins."

If ever the law of Yah and man are at variance, the former are to be obeyed in derogation of the later. [Acts 5:29]

That which is against Divine Law is repugnant to society and is void.

He who becomes a soldier of Christ has ceased to be a soldier of the world. [2 Timothy 2:3-4]

We can do nothing against truth. [2 Corinthians 13:8]

The government is to be subject to the law, for the law makes government.

The law is not to be violated by those in government.

To a judge who exceeds his office or jurisdiction no obedience is due.

It is punishment enough for a judge that he is responsible to Yah. [Psalms 2:10-12, Romans 13]

That law is the best which leaves the least discretion to the judge; and this is an advantage which results from certainty.

He is the best judge who relies as little as possible on his own discretion.

Whenever there is a doubt between liberty and slavery, the decision must be in favor of liberty.

He who decides anything, a party being unheard, though he should decide right, does wrong.

It is improper to pass an opinion on any part of a sentence, without examining the whole.

No one can be at once judge and party.

A judge is to expound, not to make, the law.

It is the duty of a judge to declare the law, not to enact the law or make it.

No man should be condemned unheard.

Everyone is presumed to be innocent until his guilt is established beyond a reasonable doubt.

Nothing is so becoming to authority [Yah Almighty] as to live according to the law [of Yah Almighty].

He acts prudently who obeys the commands of the Law. [Ecclesiastes 12:13]

An argument drawn from authority [Scripture] is the strongest in law.

An argument drawn from a similar case, or analogy, avails in law.

That which was originally void, does not by lapse of time become valid.

The law does not seek to compel a man to do that which he cannot possibly perform.

The law requires nothing impossible.

The law compels no one to do anything which is useless or impossible.

No one is bound to do what is impossible

The law shall not, through the medium of its executive capacity, work a wrong.

Nothing against reason is lawful.

It is a miserable slavery where the law is vague or uncertain.

It is a wretched state of things when the law is vague and mutable.

Examples illustrate and do not restrict the law.

In doubt, the gentler course is to be followed.

In a deed which may be considered good or bad, the law looks more to the good than to the bad

The law punishes falsehood.

The reason of the law is the soul of the law.

The reason ceasing, the law itself ceases.

He who destroys the means, destroys the end. (Such as destroying the means of transportation destroys the means of conducting relationship, the right to travel, the right to conduct business, the right to work and make a living.)

**LAWS OF THE STATE OF FLORIDA**

Florida Laws Chapter 6421 No 1. LICENSES AND OTHER TAXES

**STATUTES**

Florida Statute Chapter 322 DRIVERS' LICENSES
Florida Statute CHAPTER 318 DISPOSITION OF TRAFFIC INFRACTIONS
Florida Statute CHAPTER 316 STATE UNIFORM TRAFFIC CONTROL Title 18 USC 3116 C.J.S., Constitutional Law, Sect.202, p.987
Const. Law, 329 and corresponding Am. Jur. [2nd]
12 Am.Jur. [1st] Const. Law, Sect.573, p.269
16 Am.Jur. (2nd), Const. Law, Sect.70
25 Am.Jur. (1st) Highways, Sect.260
25 Am.Jur. (1st) Highways, Sect.427, p.717

**CASE HISTORIES**

Allen vs. City of Bellingham, 163 P. 18
American Mutual Liability Ins. Co., vs. Chaput, 60 A.2d 118, 120; 95 NH 200
Bacahanan vs. Wanley, 245 US 60
Barney vs. Board of Railroad Commissioners, 17 P.2d 82
Barbour vs. Connolly, 113 US 27, 31
Blair vs. Broadmore, 93 SE 532.
Boon vs. Clark, 214 SSW 607
Boyd vs. United States, 116 US 616.
Chicago Motor Coach vs. Chicago, 169 NE 22
City of Dayton vs. DeBrosse, 23 NE.2d 647, 650; 62 Ohio App. 232.
Cohens vs. Meadow, 89 SE 876
Connolly vs. Union Sewer Pipe Co., 184 US 540
Crandall vs. Nevada, 6 Wall 35, 46
Cummins vs. Homes, 155 P. 171
Davis vs. Massachusetts, 167 US 43
Dennis vs. Moses, 52 P. 333
Ex Parte Dickey, (Dickey vs. Davis), 85 SE 781
Frost and F. Trucking Co. vs. Railroad Commission, 271 US 592
Hale v. Hinkel, 201 US 43, 74-75.
Hadfield vs. Lundin, 98 Wash 657l, 168, p.516
Hurtado vs. California, 110 US 516
International Motor Transit Co. vs. Seattle, 251 P. 120
Kent vs. Dulles, 357 US 116 (1958)
Lafarier vs. Grand Trunk R.R. Co., 24 A. 848
Ligare vs. Chicago, 28 NE 934
Locket vs. State, 47 Ala. 45
Mehlos vs. Milwaukee, 146 NW 882
McCulloch vs. Maryland, 4 Wheat 316
Miranda vs. Arizona, 384 US 436, 491
Miller vs. U.S., 230 F. 486, 489
Mulger vs. Kansas, 123 US 623, 661
Newbill vs. Union Indemnity Co., 60 SE.2d 658.
Northern Pacific R.R. Co. vs. Schoenfeldt, 213 P. 26.
O'Neil vs. Providence Amusement Co., 108 A. 887.
Packard vs. Banton, 44 S.Ct. 256
Panhandle Eastern Pipeline Co. vs. State Highway Commission, 294 US 613
Parlett Cooperative vs. Tidewater Lines, 164 A. 313
Parks vs. State, 64 NE 682
People vs. Henderson, 218 NW.2d 2, 4
People vs. Smith, 108 Am.St.Rep. 715
Railroad commission vs. Inter-City Forwarding Co., 57 SW.2d 290
Riley vs. Carter, 79 ALR 1018
Riley vs. Laeson, 142 So. 619
Robertson vs. Department of Public Works, 180 Wash 133, 147
Rosenblatt vs. California State Board of Pharmacy, 158 P.2d 199, 203
Slote vs. Examination, 112 ALR 660
Snerer vs. Cullen, 481 F. 946
State vs. City of Spokane, 186 P. 864.

State vs. Jackson, 60 Wisc.2d 700; 211 NW.2d 480, 487

State vs. Johnson, 243 P. 1073

State vs. Strasburg, 110 P. 1020

Stephenson vs. Rinford, 287 US 251; Pachard vs Banton, 264 US 140

Simon vs. Craft, 182 US 427

Simons vs. United States, 390 US 389

Ex Parte Sterling, 53 SW.2d 294

Teche Lines vs. Danforth, Miss., 12 S.2d 784

Tiche vs. Osborne, 131 A. 60.

Thompson vs. Smith, 154 SE 579

Washington A.G.O. 59-60 No. 88, p. 11

Watson vs. Memphis, 375 US 526

Western Electric Co. vs. Pacent Reproducer Corp., 42 F.2d 116, 118.

Willis vs. Buck, 263 P.1 982.

Yick Wo vs. Hopkins, 118 US 356.

**LAW DICTIONARIES**

Bergh Business Law 25.1, 55.1.4, 61, 63

Bouvier's Law Dictionary 5.1, 9.3, 9.4, 9.5, 14.1, 25.3, 27, 28, 29.1, 71.1, 88, 92.1, 93

Century Dictionary, p.2034.

Woodward Quasi Contracts 9 72

Black's Law Dictionary, 2nd and 5th ed.

**ENGLISH LANGUAGE DICTIONARIES**

Webster Unabridged Dictionary 9.1

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF FLORIDA
AT ORLANDO

From:

Karl Alan Schonwalder
c/o 8904 SW 22nd Street
Boca Raton, Florida

**6:11-CV-1192-ORL-35-KRS**

**CERTIFICATION OF SERVICE/MAILING**

The undersigned state as follows:

I______________________________ have been authorized by the above named party to serve the following party(s);
1) U.S. Courthouse, 401 West Central Boulevard, Suite 1200, Orlando, Florida 32801-0120,
2) Lawson Lamar, c/o 415 North Orange Avenue, Orlando, Florida 32801,

☐ PROOF OF SERVICE; I personally served copies of the following stated documents or other as identified: NOTICE FOR DISMISSAL FOR LACK OF JURISDICTION; BRIEF IN SUPPORT OF NOTICE FOR DISMISSAL FOR LACK OF JURISDICTION; TABLE OF AUTHORITIES; CONSTITUTIONS; SUMMONS; CERTIFICATION OF SERVICE/MAILING;

☐ PROOF OF MAILING; I deposited copies of the following stated document(s) with the USPO in sealed envelopes, first class postage paid and addressed to the above names and addresses: NOTICE FOR DISMISSAL FOR LACK OF JURISDICTION; BRIEF IN SUPPORT OF NOTICE FOR DISMISSAL FOR LACK OF JURISDICTION; TABLE OF AUTHORITIES; CONSTITUTIONS; SUMMONS; CERTIFICATION OF SERVICE/ MAILING;

This signer acknowledges that the forgoing is true, correct and certain, materially complete, relevant and not misleading

on this ______day of ____________ in the year of our Savior _____ on/at ________________________,

____________________________ before the undersigned witnesses.

Signer: __________________ Witness: __________________ Witness: __________________

(Please print full name below signature)